# Pyle, Appellant, *v.* Pittsburgh & Lake Erie Railroad Company.

*Equity—Bill to enjoin obstruction of street—Dedication—Conflicting evidence—Findings of fact—Appeals.*

On a bill in equity to restrain defendants from obstructing a portion of a street which had been vacated by an ordinance of a city, in which plaintiffs, who were lot owners on the street, alleged they had a right to free and uninterrupted use, by reason of its

dedication by former owners, in such a way as to guarantee the plaintiffs such free and uninterrupted use, where the main question was that of dedication, and the essential findings of fact, based upon conflicting evidence, were against the plaintiffs' contention, the decree refusing an injunction was affirmed.

Argued Oct. 6, 1914. Appeal, No. 147, Oct. T., 1914, by plaintiffs, from decree of C. P. Lawrence Co., Dec. T., 1909, No. 1, In Equity, dismissing bill in case of Michael Pyle, Helen S. Newell in her own right, and Helen S. Newell, guardian of Sarah S. Newell, minor, Joseph C. Ewing, Anna Belle Townsend, Fannie L. Kile, and Ellen M. Agan v. Pittsburgh & Lake Erie Railroad Company and Baltimore & Ohio Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity to enjoin the obstruction of a street. PORTER, P. J., filed an opinion which was in part as follows:

The principal question involved in this case is one of fact, viz: whether Walnut street, now Ashland avenue, was dedicated as a street over and across the Pennsylvania and Ohio Canal.

By deed dated April 4, 1835, John Crawford of Bucks County, Pennsylvania, conveyed to Benjamin Darlington, of Pittsburgh, Pennsylvania, a large tract of land containing about five hundred acres situated in what was then Beaver County, Pennsylvania, and is now in the Seventh Ward, City of New Castle, Lawrence Co., Pa. And by deed dated June 7th, 1836, said Darlington and his wife conveyed the undivided one-half of said tract of land to William Hays, of Pittsburgh, Pa. Some time between the time when Darlington acquired title to the land, and May 21, 1841, a small part of said tract was plotted into town lots with streets and alleys by said Hays and Darlington. The said plot was recorded in the recorder's office of Beaver County, Pa., on May 21, 1841, in Deed Book Vol. T. 19, page 473. Upon the face

of the plot is written: "Plan of the Town of Mahoning, Beaver County, Pa.," and in the deeds by Hays and Darlington for lots in this plan of lots the plot is referred to as the Darlington and Hays plan of lots in the Town of Mahoning. The plan does not show when it was made, but we conclude it was adopted by Hays and Darlington on June 7th or 8th, 1836, for the reason that Hays did not acquire title to the undivided one-half of the land until June 7, 1836; and on June 8, 1836, he and Darlington join in the conveyance of Lot No. 5 in said plan and use the following language: "Being lot No. 5, situate in said Benjamin Darlington and William Hays' plan of lots in the Town of Mahoning," thus indicating that on June 8, 1836, when this deed was made, the plan had been adopted and it is scarcely probable that the plan was adopted by Hays until he acquired an interest in the land on June 7, 1836.

The Town of Mahoning afterwards became the Borough of Mahoningtown and finally the Seventh Ward of the City of New Castle.

By the Act of April 14, 1827, P. L., 369, the Legislature of Pennsylvania incorporated the Pennsylvania and Ohio Canal Company, and a canal was constructed through the lands of Darlington and Hays that was plotted into town lots. The evidence does not show when this canal was constructed nor do we know, but we conclude it was constructed before the land was plotted because the plan of lots shows the canal. The canal company took only an easement over the land under the Act of the Assembly (Pittsburgh & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23,) and there is no evidence that it acquired a fee by gift or purchase. The fee therefore was in Hays and Darlington. The plan of Hays and Darlington embraced sixty-two lots with four parallel streets running north and south and three parallel streets running east and west with alleys in the rear of the lots. South of the canal were ten lots and but one of the streets running north and south, viz: Walnut street, is

shown south of the canal. This street runs between lots Nos. 36 and 37 south of the canal. All of these ten lots face on Lacock street, which runs east and west and is south of, parallel with, and contiguous to the canal.

Just north of the canal, parallel with and contiguous to it, is Canal street, upon which face fourteen lots, being the south row of lots in that part of the plan which lies north of the canal. The canal is indicated on the plot by four unbroken parallel lines running from east to west through the whole plan, the outside lines being 14-20 of an inch from each other and the inside lines being 10-20 of an inch apart, while the space between the middle lines and the outside lines is 2-20 of an inch. Between the middle lines are written the words "cross-cut canal" and we take it that the space between the middle lines was the canal bed, while the parallel strips on either side were the tow paths. Just next the tow-path on the north is Canal street and next the tow-path on the south is Lacock street. Three of the north and south streets, viz: Spruce, Cedar and Liberty streets are shown on the plan to begin at Canal street and extend northward to Cherry alley,—while Walnut street extends from said Cherry alley, southward to said Canal street, and then from Lacock street, which is just south of the canal southward between Lots Nos. 36 and 37. There are no lines drawn across the parallel lines indicating the canal, showing that Walnut street was continued as such over and upon the canal. The plot shows only that Walnut street opens into Canal street on the north and into Lacock street on the south, but does not show that it extended over and across the canal for the four parallel lines mentioned above as indicating the canal are unbroken, nor are there any intersecting lines at this point. From this plan we cannot say there is evidence of intention on the part of Darlington and Hays by platting to dedicate Walnut street upon and across the canal.

"In order to raise the implication and to support the

intention, to dedicate lands to public use by platting the same, there must be affirmative evidence upon the face of the plat, of an intention to make such dedication, in order that the mere platting of the land may serve such purpose.

"The mere fact that there is a blank space, without any mark indicating the use to which such land may be put, will not indicate any intention of dedicating such blank space to a public use, as a public square."   Tiedman on Municipal Corporation, 221.

If Walnut street was a street throughout its entire length at the time the conveyance was made, then the grantees took title with the implied understanding that it would remain a street as it was at the time the conveyance was delivered.   But the plat does not show that it was a street—that it was dedicated as a street throughout its entire length including the space over the canal. The plat not showing this, then it is competent to show that there was such a user as would indicate an intention to dedicate the street over the canal.   But was there such a user as would indicate such an intention at the time the several lots were sold by Darlington and Hays, or either of them, to their predecessors in title of the plaintiffs?   Was the street used over and across the canal to such an extent that the predecessors in title of the plaintiffs had good reason to believe the street was dedicated to public use throughout its entire length? We think not.   Prior to 1854 there was no street, at least there was no means of crossing over the canal at Walnut street.   There was nothing upon the ground to indicate that the street was dedicated over and across the canal, nor did the plat show such a street at this point.   But so far as the evidence goes, the title to the lots now owned by plaintiffs passed out of Darlington and Hays before that time.   The deed from Darlington and Hays dated June 8, 1836, to James S. Crawford is the first, and that of Hays to James McCullough, dated November 12, 1847, is the last that was offered in evi-

dence showing conveyances by Hays and Darlington, or either of them, to the predecessors in title of the plaintiffs. Up to 1854 there was no bridge over the canal at Walnut street, so that when the predecessors in title of the plaintiffs acquired title to their lots there was no street in use over the canal and they would have no right to conclude from a user that such a street had been dedicated from Hays and Darlington over the canal. There being no evidence by long continued use of a dedication of the street over the canal at the time the titles to the several lots of the plaintiffs passed out of Hays and Darlington, and the plot of said lands not showing an intention to so dedicate, we are led to the conclusion that Hays and Darlington did not dedicate Walnut Street over and across the canal, at least that such a dedication is not established by the evidence beyond a reasonable doubt.

"In order, however, that any dedication of public lands might prove effective, the intention on the part of the owner to so dedicate his land must be established beyond a reasonable doubt, and unless such intention is established by competent evidence, there is no valid dedication, and the public has nothing which it can claim." Tiedman on Municipal Cor., page 222.

By an agreement entered into between the City of New Castle and the defendant railroad companies during the years 1902 and 1903, it was provided and agreed that the defendant companies should, at their own cost and expense, construct overhead crossings to carry their railroad tracks over Liberty street and Lafayette street in the Seventh ward of said city, where the grade crossings existed at that time, and that each of the defendant companies would also pay one-third of the damages which should be caused to property by making said improvements and changing the grade of the streets to conform thereto. In consideration whereof the said City of New Castle agreed to vacate that part of Ashland avenue, formerly Walnut street, lying between the

north line of the right of way of the Baltimore & Ohio Railroad and the south line of the right of way of the Pittsburgh & Lake Erie Railroad whenever overhead crossings were completed.

In pursuance of the agreement· made between the City of New Castle and the defendant railroad companies, the said defendant companies constructed said overhead crossings at Lafayette street and Liberty street of the full width of the streets, with a clearance of 13 feet, and constructed sidewalks through the said crossings and paved the cartway thereof at their own expense, and also paid one-third of the damages caused to property owners by the changing of the grade of said streets, and in all respects complied with their agreement with the City of New Castle at an expense to the said defendant companies of some $95,000.00, and during the construction of the said improvements plaintiffs, residing in the immediate vicinity thereof, made no objection and put no obstruction in the way of making such improvement.

By ordinance approved February 24, 1909, the City of New Castle vacated that part of Ashland avenue, formerly Walnut street, in the Seventh ward of the City of New Castle, lying between the north line of the right of way of the Pittsburgh, Cleveland & Toledo Railroad, operated by the Baltimore & Ohio Railroad Company and known as the right of way of the Baltimore & Ohio Railroad Company and the south line of the right of way of the Pittsburgh & Lake Erie Railroad Company.

Upon the foregoing findings of fact we arrive at the following conclusions of law:

1. The evidence does not show that Walnut street now Ashland avenue, was ever created a street by grant or dedication over and across the Pennsylvania and Ohio Canal.

2. In order that any dedication of land occupied by the Pennsylvania and Ohio Canal, in the line of Walnut street, may prove effective the plaintiffs must show, be-

yond a reasonable doubt, the intention on the part of the owner to dedicate the same to public use for the use of a public highway.

3. The evidence does not show, beyond a reasonable doubt, that Hays and Darlington or any other person owning a part of the bed of the Pennsylvania & Ohio Canal in the line of Walnut street ever intended to dedicate the same to public use for the purpose of a highway.

4. There is no sufficient evidence of user of the land occupied by the Pennsylvania and Ohio Canal, in the line of Walnut street, to show a dedication by user to public use or to make the same a public highway.

5. There is no evidence either by grant, dedication or public user of any property right of the plaintiffs in the land occupied by the Pennsylvania and Ohio Canal in the line of Walnut street, now Ashland avenue, between the northern right of way of the Pittsburgh, Cleveland & Toledo Railroad and the south right of way line of the Pittsburgh & Lake Erie Railroad.

6. There was no public highway or no way for public travel across the Pennsylvania and Ohio Canal, in the line of Walnut street, prior to the passage of the ordinance by the Borough of Mahoningtown in 1892, except the license or permissive use during the time that the bridge erected by public subscription was maintained across the canal, and after the canal was abandoned.

7. When the bridge erected by public subscription fell into decay the license to cross the canal was terminated until after the canal was abandoned.

8. There never was any public road or highway upon which the public was entitled to travel across the Pennsylvania & Ohio Canal, in the line of Walnut street, except by license, until the passage of the ordinance by the Borough of Mahoningtown in the year 1892.

9. The public highway ordained across the tracks of the defendant companies, in the line of Walnut street, by the Borough of Mahoningtown in the year 1892,

ceased to be a public highway by the ordinance of the City of New Castle passed February 24, 1909, vacating that part of Ashland avenue lying between the north line of the right of way of the railroads operated by the Baltimore & Ohio Railroad Company and the south line of the right of way of the Pittsburgh & Lake Erie Railroad Company, and after the passage of said ordinance neither the public nor the plaintiffs had any right to use the same for passage across said tracks nor had they any property right therein.

10. Grade crossings are a constant peril not only to those using them but to those upon trains passing over them, liable to the danger of collision. Such crossings, whether private or public, ought in all cases to be done away with, and equity will protect a right to use them only when such right is so clear that a chancellor must recognize it. No class of cases calls more strongly for the application of the rule that all doubtful questions must be received against an injunction.

11. There is no sufficient evidence to sustain the bill of complaint or to sustain the prayer of the bill.

12. Under all the evidence the bill should be dismissed.

The court dismissed the bill. Plaintiffs appealed.

*Errors assigned* were various exceptions to the findings of fact and law, and to the decree of the court.

*Robert K. Aiken,* for appellants.

*Wylie McCaslin,* with him *Martin & Martin,* for appellees.

PER CURIAM, January 2, 1915:

It was sought by the bill filed in this case to restrain the defendants from obstructing a part of a street that had been vacated by ordinance of the City of New Castle. The plaintiffs are lot owners and they alleged that they

had a right to the free and uninterrupted use of the whole street, notwithstanding the vacation of a part of it by the city, by reason of its dedication by former owners who had subdivided their land and laid out streets and alleys for the use of the purchasers of lots. The main question was that of dedication and the essential findings of fact were against the plaintiffs' contention. The case received very careful consideration by the learned judge of the Common Pleas and we find no reason for disturbing his findings.

We affirm the decree, at the cost of the appellants, for the reasons stated in the opinion of Judge PORTER.